**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**at KANSAS CITY, KANSAS**

LENEXA HOTEL, LP,

Plaintiff,

vs.

HOLIDAY HOSPITALITY FRANCHISING, INC.,

Defendant.

Case No. 12-cv-2775-KHV-DJW

**FIRST AMENDED COMPLAINT**

Plaintiff Lenexa Hotel, LP, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 15(a)(1) herein files this First Amended Complaint against Defendant Holiday Hospitality Franchising, Inc. ("HHFI") on personal knowledge concerning its own actions and representations made to Plaintiff and its agents, and on information and belief as to all other matters. Plaintiff alleges as follows:

***NATURE OF THE ACTION***

1. Plaintiff, through its principal, is an experienced hotel franchisee who brings this action seeking damages and a declaratory judgment for ongoing breaches of a franchise agreement by HHFI – a nine-brand global hotel franchisor.

2. HHFI holds itself out as a world leading hotel franchisor able to drive demand to the 4,500 hotels worldwide flagged with its nine brands through a number of different channels, including Priority Club rewards, sales and marketing professionals, internet sites and global call centers.

3. HHFI induced Plaintiff to convert its full service Radisson hotel located off I-35 and 95th Street in the Kansas City metropolitan area to HHFI's upscale brand,

Crowne Plaza, by promising to effectively market and promote the Hotel. In particular, through emails and in-person communications, HHFI vowed to market the Hotel, which is located in suburban Lenexa, Kansas, to business travelers and other potential customers as an upscale Kansas City metropolitan hotel.

4. In May 2008, Plaintiff signed a long-term franchise agreement, committed to spending millions of dollars in conversion costs, and agreed to pay millions more in royalties and fees over the ten-year franchise term.

5. At all relevant times, the Hotel has been one of only two Crowne Plaza hotels in the Kansas City metropolitan area. The other is located in downtown Kansas City, Missouri. The InterContinental Hotel on the Country Club Plaza in Kansas City, Missouri is flagged with HHFI's luxury brand. In total, these three hotels – located downtown, on the Country Club Plaza, and in South Kansas City – are HHFI's only upscale or luxury hotels in Greater Kansas City.

6. Almost immediately after the Hotel opened as a Crowne Plaza in May 2009, revenues were far below expectations for a Crowne Plaza conversion. In fact, the Hotel's revenue dropped after the conversion. The revenue numbers have continued to lag far behind national and Kansas City averages. A subsequent investigation has identified severe deficiencies with HHFI's marketing efforts, especially those through the internet and call centers.

7. Plaintiff and its agents have conducted hundreds of test calls, many of which were audio- and videotaped, to the 1-877-2-CROWNE (877-227-6963) and 1-800-2-CROWNE (800-227-6963) lines. These calls speak volumes. They prove a systemic failure by HHFI's reservation service agents to identify and recommend the Hotel as a

potential option in Kansas City. In many of these calls, HHFI's call center representatives did not identify the Hotel at all. Instead, they identified only the downtown Crowne Plaza. In fact, the agents often suggested a Holiday Inn, a midscale HHFI brand, even though the customer called the specific Crowne Plaza phone number and asked specifically for a Crowne Plaza hotel in Kansas City.

8. The Hotel is also still not being correctly promoted and effectively identified by HHFI on the internet. For example, as of the date of this First Amended Complaint, the HHFI-sponsored webpage for the Hotel shows up no sooner than page 4 in the organic (as opposed to paid) Google search results for Kansas City Crowne Plaza hotels. By contrast, the HHFI webpage for the Crowne Plaza downtown shows up on page 1 of a search even for Overland Park Crowne Plaza hotels. This discrepancy is largely due to the content HHFI has used to describe the Hotel, and HHFI's repeated refusal to promote the Hotel within the Kansas City metropolitan area. HHFI has failed to design adequate webpages and to associate the Hotel with descriptors that effectively market the hotel. These deficiencies make it less likely that business travelers and other potential customers visiting Kansas City will learn about the Hotel through the internet. Other Crowne Plaza hotels in the system are provided with different, more effective internet webpages and web resources that allow potential customers to find these hotels and book rooms there far more consistently and easily.

9. For more than 25 years, Plaintiff's limited partner, Stephen J. Craig, has been an executive and possessed ownership in companies that have owned and operated more than 100 hotels in 25 states. Mr. Craig has written a number of letters to executives at the highest levels of HHFI and its affiliates over the last three years explaining in detail

the problems and issues relating to HHFI's reservation system and the marketing of the Hotel on the internet. At times, HHFI has said it would attempt to fix the issues. For example, Plaintiff's investigation after the Hotel opened revealed that HHFI had set up the Hotel in the HHFI channels and marketed the Hotel on the internet primarily as a Lenexa, Kansas hotel. Plaintiff, however, demanded that the Hotel be associated with Kansas City and Overland Park, and not be associated with Lenexa in the HHFI channels. HHFI claims to have changed the Hotel's identifiers within the HHFI channels. Even so, it does not appear that HHFI has changed the Hotel's indexing or key word associations on the internet. To the contrary, Plaintiff has discovered recently that the Hotel is still associated exclusively with Lenexa on at least two HHFI affiliated websites: BusinessSource and RoomKey. HHFI has yet to properly index the Hotel as a Kansas City metropolitan area hotel, and continues to index and identify the Hotel with Lenexa in at least some channels. This damages the Hotel's ability to appear in the results of searches being conducted by consumers on other third-party websites.

10. HHFI has also been vague and uncertain about its obligations. In a June 2012 videoconference call, HHFI took the position that its system and its internet resources are working properly. Plaintiff is forced to bring this action to obtain specific information from HHFI about its system and resources. HHFI's actions and inactions are destroying the purpose of the license agreement and undercutting the ability of the HHFI system and marketing resources to drive demand to the Hotel.

11. The occupancy rates, average daily rate, and revenue per available room (RevPar) for the Hotel have consistently been a fraction of what HHFI represented as the national average for Crowne Plaza hotels in suburban areas in 2007. The lack of demand

has led to revenue shortfalls that have significantly drained the Hotel's reserves for capital improvements and property improvement. Money that could have been spent on these improvements now must be spent to address working capital needs for the daily operation of the Hotel. Despite Plaintiff spending more than $7 million over the past four years to convert and upgrade the Hotel, HHFI continues to take the position that Plaintiff has not completed its Property Improvement Plan ("PIP"), which is part of the franchise agreement. However, HHFI's misconduct has crippled the Hotel's ability to generate any cash flow, and thereby stifled the Hotel from fully completing the renovation and upgrade process.

12. Plaintiff is entitled to actual damages and a declaration that HHFI cannot assert that Plaintiff is in breach of the license agreement. Plaintiff's damages are on-going and will continue to accumulate through the end of the ten-year franchise agreement unless numerous issues are resolved. To this day, Plaintiff continues to pay HHFI hundreds of thousands of dollars annually in royalties and other fees, while HHFI continues to ignore its most basic contractual obligation: to effectively market and promote the Hotel and to drive demand through HHFI's call centers, websites, and its HOLIDEX reservation system.

## *THE PARTIES*

### Plaintiff

13. Plaintiff Lenexa Hotel, LP is a Kansas limited partnership with a principal place of business at 730 New Hampshire, Suite 206, Lawrence, Kansas 66044-2776. Lenexa Hotel LP has two owners: Ventura Hotel Corporation (69%) and Stephen J. Craig (31%). Stephen J. Craig owns 100% of Ventura Hotel Corporation.

14. Plaintiff owns and operates a hotel located at 12601 West 95th Street, Lenexa, KS 66215, which is currently flagged as a Crowne Plaza (the "Hotel"). The Hotel is a full service hotel offering 257 guest rooms on four floors. The Hotel's upscale amenities include a health and fitness center (including an indoor pool), a restaurant, a bar, a business center, and ample meeting and banquet space.

**Defendant**

15. Defendant Holiday Hospitality Franchising, Inc. ("HHFI") is a Delaware corporation with its principal place of business in Atlanta, GA. Holiday Hospitality Franchising, Inc., is a signatory to a licensing agreement with Plaintiff.

16. Upon information and belief, Defendant and its related affiliates coordinate activities regarding the ownership, management, leasing, and franchising of Crowne Plaza properties in the United States and all were involved in decisions described in this First Amended Complaint, including the advertising and promotion (or lack thereof) of the brand and the decision to ignore Plaintiff's repeated requests for action. HHFI and its affiliates also coordinated on representations made to Crowne Plaza owners and franchisees such as Plaintiff regarding the efforts Defendant was undertaking to promote and support the Crowne Plaza brand. The Defendant in this case uses the trade name "InterContinental Hotels Group" in business operations in the United States.

***JURISDICTION AND VENUE***

17. Subject matter jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District.

19. This Court has personal jurisdiction over the Defendant because it regularly conducts business in Kansas, and because the Hotel that is the subject of the dispute is located in Kansas. Thus, the Court has both general and specific jurisdiction over the Defendant.

## *FACTUAL ALLEGATIONS*

### Hotel Segments, Terminology and HHFI's Brands

20. Hotels are often grouped into chain scale segments such as luxury, upscale, midscale, and economy.

21. InterContinental Hotels Group, Hilton Worldwide, Marriott International, and Starwood Hotels and Resorts are the four major hotel players in the U.S. upscale hotel market.

22. HHFI is one of the largest hotel groups in the world – today operating over 650,000 hotel rooms. Its three major brands include:

- <u>InterContinental</u>: HHFI's luxury brand. It is marketed to "well-traveled, affluent guests" and has locations in over 60 countries.
- <u>Crowne Plaza</u>: HHFI's upscale brand. Typically located in major area markets and important secondary cities, Crowne Plaza Hotels are full-service facilities targeted to upscale business, conference and leisure travelers.
- <u>Holiday Inn</u>: HHFI's midscale brand. It is a full service hotel, with a reputation for value.

23. Every hotel in the HHFI system has a Holidex code or inn code. The code is a five letter identifier. The Hotel's current Holidex inn code is MKCCP, which stands for Metro Kansas City Crowne Plaza.

24. Hotel performance is tracked by metrics such as:

- Occupancy: percentage of available rooms that were sold during a specified period of time.
- Average daily rate (ADR): measure of the average rate paid for rooms sold, calculated by dividing room revenue by rooms sold.
- Revenue per available room (RevPAR): the total guest room revenue divided by the total number of available rooms.

**Stephen J. Craig's Background and the Hotel's History**

25. Stephen J. Craig has been a decision making executive of five companies that have collectively owned and operated 110 hotels in 25 states. Mr. Craig was the Executive Vice President of Brock Hotel Corporation when it owned and managed 76 Holiday Inns in 23 states and was the largest franchised operator of hotels in the world. He also was a member of the Board of the International Association of Holiday Inns (IAHI) for eight years. Mr. Craig has been nationally recognized for excellence in the field of hospitality ownership and management for over 35 years.

26. One of the entities in which Mr. Craig was an executive acquired the Hotel from Holiday Inns, Inc. in 1980. From 1971, when the Hotel was constructed, through 1984 it was a Holiday Inn. In 1984 the Hotel was converted from a 112 room Holiday Inn to a 297 room Holidome Indoor Recreation Center and remained as such until 2003.

The Hotel was converted to a Radisson in 2003 and remained a Radisson until its conversion to the Crowne Plaza brand.

**The Franchise Agreement Negotiations**

27. When Plaintiff contemplated converting the Hotel to another brand in early 2007, Stephen J. Craig and another executive performing services for Plaintiff, Mr. William Stuckeman, began discussions with HHFI. In particular, they had numerous communications with HHFI's Mr. Keith Biumi about converting the Hotel to a Crowne Plaza. At the time, Mr. Biumi was the Regional Vice President, Upscale Franchising and Business Development.

28. Converting from a Radisson to a Crowne Plaza is an expensive proposition. To justify spending millions of dollars in conversion costs, being obligated to pay hundreds of thousands annually in royalties each year, Stephen J. Craig insisted upon assurances from HHFI that it would generate demand for the Hotel to justify the multi-million dollar investment.

29. Mr. Craig has been involved with the ownership and operation of the Hotel for 38 years, and understood that the Hotel's location would require regional and national marketing to attract out-of-town business travelers and groups.

30. Mr. Craig had extensive conversations and communications with HHFI's representatives about HHFI's ability to attract out-of-town business travelers and group demand to the Hotel. HHFI repeatedly represented that the reservation system – supported through the web, call centers around the world and GDS (the travel agent booking system) – was designed to market the Crowne Plaza hotel as one of only three HHFI upscale or luxury hotels in the Kansas City metropolitan area. HHFI further

represented that its marketing and internet experts would develop a plan to drive room revenue and attract out-of-town business travelers and groups to the Crowne Plaza metropolitan Kansas City hotel.

31. HHFI also represented that it would drive demand to the Hotel with the largest Priority Club rewards program (37 million members in 2007; 69 million members today), world-class revenue systems, a sales force with thousands of sales professionals, and a system fund to maintain marketing that generates demand for HHFI hotels.

32. More specifically, in 2007 HHFI represented to Plaintiff that a hotel located in downtown Kansas City was converting from a Radisson to a Crowne Plaza. Also, HHFI represented to Plaintiff that a hotel located on the Country Club Plaza in Kansas City was converting and was flagged as HHFI's luxury brand, the InterContinental Hotel. Mr. Craig and Mr. Stuckeman had communications with Mr. Biumi about HHFI's commitment to building the upscale and luxury brands in the Kansas City metropolitan market. Mr. Biumi represented that Crowne Plaza, through its Director Mike FitzMaurice, would support a relationship between the Hotel and the Crowne Plaza downtown and collectively enhance the HHFI upscale and luxury brands in the Kansas City metropolitan area. HHFI repeatedly promised that HHFI would coordinate efforts between its upscale Crowne Plaza hotels in Kansas City.

33. In communications that occurred in August 2007, Mr. Stuckeman made it clear that the key issue for Plaintiffs was whether HHFI could demonstrate the ability to generate corporate transient and group demand for the Hotel. Mr. Stuckeman pointed out to Mr. Biumi that a Holiday Inn was opening at the corner of I-435 and Midland Drive about 7 miles from the Hotel's location.

34. Mr. Biumi responded by email that "we generally don't [know about Holiday Inn's] because we do not recognize impact on each other's brands. The [Holiday Inn] on Midland Road at I-435 7 miles away will not affect your ability to get a CP license at all. My feeling is that 7 miles is a very far distance for a client to travel, generally anything more than 3 to 5 miles is too far to influence a traveler. And, as you know, [Holiday Inn] has a different client target and focus than CP. The rate difference between the brands also separates them in each market segment." In addition to this email, HHFI represented and stressed that an upscale Crowne Plaza, appealing to business travelers, would be marketed to a different target client than a midscale Holiday Inn, and therefore a Holiday Inn would not prevent a Crowne Plaza from drawing out-of-town business travelers.

35. After talks had stalled over the Crowne Plaza conversion, Mr. Biumi alerted Mr. Craig and Mr. Stuckeman in February 2008 that he had received an application for a new build Crowne Plaza in Olathe, and encouraged Lenexa Hotels to get its application submitted. Based on this representation and HHFI's representations about its ability to effectively market the Hotel as an upscale Kansas City metropolitan area hotel and drive demand to the Hotel, Plaintiffs moved forward with the conversion process.

36. In late February 2008, Mr. Stuckeman and Mr. Craig continued to evaluate how to position the Hotel. Mr. Stuckeman wrote to Mr. Biumi: "Could we be called Crowne Plaza Kansas City South?" Biumi responded: "Our process is we have the field director (Mike) talk to the internet experts to see what is most commonly searched on a city. Mike, you know best, please advise." In addition to this email, HHFI

acknowledged in other communications its obligations to effectively market the Hotel, and represented that it had the resources, knowledge, and expertise about the Kansas City market to effectively market the Hotel.

37. For example, in late February 2008, Mr. Craig and Mr. Stuckeman had communications with Mr. Biumi and Mr. Fitzmaurice during which Mr. Biumi and Mr. FitzMaurice expressly represented that HHFI had a proprietary System, internet experts, the largest loyalty rewards program, and a worldwide network that would be capable of driving corporate and group business to the Hotel.

38. During these same negotiations, Mr. Biumi and Mr. FitzMaurice represented that HHFI's internet experts would evaluate the Kansas City market and strategically pick key words to identify the upscale hotel. They would also buy ad words designed to maximize the Hotel's internet presence and bring the Hotel to the forefront of all internet search engines used by business travelers and upscale consumers, as well as travel sites such as Hotels.com, Expedia, and Travelocity.

39. HHFI repeatedly promised that immediate and significant benefits would be realized from the central reservations system for the Crowne Plaza brand. HHFI represented that it had dedicated resources for the Crowne Plaza brand, including the 1-800-2 Crowne number, which was designed to drive demand to the Hotel.

40. To convert from a Radisson to a Crowne Plaza, Lenexa Hotel had to agree to a Property Improvement Plan. This plan required Lenexa Hotel to commit to spend millions of dollars to renovate the Hotel and convert it to an upscale Crowne Plaza. Lenexa Hotel also had to commit to paying royalties to HHFI, which were significantly higher than those paid to Radisson.

41. Based on the representations by HHFI during the negotiation process about the design of its system and its ability to draw Priority Club Rewards members and attract other upscale, business travelers, Lenexa Hotel submitted the conversion application and committed to converting the Hotel to a Crowne Plaza. The application very clearly states that the primary reason for purchasing the Crowne Plaza license was: "The ability to drive corporate transient and group business and loyalty program."

**THE UFOC**

42. Prior to executing the license, HHFI provided Lenexa Hotel with a Uniform Franchise Offering Circular (UFOC). This document reinforced the representations previously made to Mr. Craig and Mr. Stuckeman about access to a central reservation system and advertising and marketing, and HHFI's ability to drive demand to the Hotel. The UFOC described HHFI's proprietary reservation system and touted the "Hotel Level Next Generation Property Management System Statement of Work" that was signed with International Business Machines (IBM) in 2003. The UFOC also describes a technology fee that will be used for Holidex Plus. The UFOC also included a section on Financial Performance Representations.

43. The UFOC had representations about the revenue capabilities of the system and gave specific numbers for similarly situated Crowne Plaza hotels.

| | Occupancy Rate | ADR | RevPar |
|---|---|---|---|
| Average of 53 mature Crowne Plazas in suburban markets - 2007 | 63.5% | $110.95 | $70.43 |

**The Terms of the Licensing Agreement and Personal Guarantee**

44. On May 13, 2008, Lenexa Hotel executed the Crowne Plaza Conversion License Agreement.

45. The License Agreement provides at the outset: "Licensor operates and licenses a system designed to provide a distinctive, high quality hotel service to the public under the name 'Crowne Plaza.'" "High standards established by Licensor are the essence of the System."

46. The License Agreement further explains: The "System is composed of all elements which are designed to identify Crowne Plaza hotels to the consuming public. ..."

47. The System includes "access to a reservation service operated in accordance with specifications established by Licensor from time to time; distribution of advertising, publicity and other marketing programs and materials. . . ."

48. During the license term, the Licensee owes certain fees, including:

- 3% to 5% of gross room revenue (ramp up provision);
- 3% of gross room revenue for "Service Contribution" including paying for the reservations service;
- monthly technology fee of $11.91 per room;
- all fees from travel agent commission programs;
- $3 per room per month for participating in Marketing Association

49. These representations about the HHFI System, including the reservation services and marketing programs, conveyed to Plaintiff that HHFI would design and provide a marketing program tailored to fit the Hotel and drive demand to the Hotel.

50. The License Agreement also incorporates a Property Improvement Plan. A draft of the property improvement plan ("PIP"), which was created in March 2007 and is attached to the license agreement, describes the location and condition of the Hotel. It provides that the Hotel is close to Oak Park Mall. Corporate Woods Business Park and

Sprint Campus are several miles away in Overland Park. The PIP also details the renovations.

**The Hotel's Holidex Code and Indexing on the Internet**

51. On May 6, 2009, about a year after the franchise agreement was signed, the Hotel opened as a Crowne Plaza.

52. Almost immediately, Lenexa Hotel began to uncover issues with how the Hotel was being marketed by HHFI.

53. HHFI set up the Hotel in its internet marketing channels as a Lenexa hotel, as follows:

30 Character: Lenexa – Overland Park
14 Character: Lenexa
GDS: Lenexa Overland
URL: lenexaoverland

54. HHFI did not perform any evaluation of the Kansas City market or take any steps to associate the Hotel with key words that would identify the Hotel as an upscale Kansas City metropolitan hotel located in South Kansas City near Corporate Woods and the Sprint Campus.

55. In the ensuing years, two major failings on the part of HHFI have plagued the Hotel. First, the Hotel was not visible on the internet in searches for Kansas City hotels.[1] Second, the Central Reservation Office (CRO) has failed to find and recommend the Hotel to potential customers, even those calling a line that is supposed to be dedicated as a Crowne Plaza reservation line.

**The Financial Results**

[1] As of the date of this First Amended Complaint, a Google search for "Kansas City Crowne Plaza" yields two results on the first page for the Hotel. Both of these results derive from independent marketing efforts by Mr. Craig, which he undertook due to the failure of HHFI.

56. By any measure – occupancy percentage, average daily rate (ADR) and revenue per available room (RevPAR) – the Hotel has performed worse as a Crowne Plaza than as a Radisson or Holiday Inn, and, upon information and belief, is one of the worst performing HHFI hotels by revenue in the Kansas City market. This is directly attributed to HHFI's reservation system and marketing failures. The Hotel is not being identified by call center agents, the Hotel is not easily found on the web, and HHFI continues to send mixed signals to the consumer by identifying the Hotel as a local hotel in Lenexa, Kansas, instead of one of three upscale or luxury HHFI brand hotels in the Kansas City metropolitan area.

57. Comparing HHFI's representations in the UFOC to how the Hotel has performed illustrates how HHFI has completely failed to drive demand to the Hotel.

| | Occupancy Rate | ADR | RevPar |
|---|---|---|---|
| Average of 53 mature Crowne Plaza Hotels in suburban markets - 2007 | 63.5% | $110.95 | $70.43 |
| | | | |
| the Hotel - 2009 | 28.07% | $72.74 | $20.42 |
| the Hotel - 2010 | 33.75% | $77.95 | $26.31 |
| the Hotel - 2011 | 41.60% | $81.17 | $32.75 |

**The Internet**

58. Lenexa Hotel quickly discovered that HHFI had not taken any steps to make the Hotel visible on major search engines in a location that could reasonably be found by potential customers.

59. The lack of presence on the internet was apparent as early as May 12, 2009, when Lenexa Hotel sent an email expressing concern that the Hotel was still being identified as a Radisson even though the hotel was operating as a Crowne Plaza, and even

though the license agreement had been signed more than a year ago to re-brand the Hotel as a Crowne Plaza.

60. Despite assurances to the contrary, the internet problems were not solved. Even after the Hotel was correctly identified as a Crowne Plaza, rather than a Radisson, it was not appearing in queries through various search engines. After being open for two months, the Crowne Plaza in Lenexa was not bookable through Expedia or Orbitz, as evidenced by an email from a Lenexa Hotel employee to Mike FitzMaurice on July 21, 2009.

61. In response to inquiries about search engine optimization, FitzMaurice wrote: "HHFI has a full team who will do that on your behalf." He added: "they typically kick off over multiple days/weeks of over 3000 key word purchases. It continues as an on-going benefit to all hotels." "We can discuss organize key words and others."

62. It became clear that HHFI did not have internet experts who had evaluated the Kanas City metropolitan area or designed a plan to attract upscale, business travelers in the Kansas City metropolitan area to the Hotel. Instead, FitzMaurice's emails in late May 2009 reveal that HHFI's key word purchases on the internet were linked almost exclusively to Lenexa, Kansas.

63. On July 23, 2009, Mr. FitzMaurice represented that "You [the Hotel] are linked to KC also." This may be true in some HHFI channels, but it does not appear to be true on the internet or certain HHFI channels.

64. Further inquiries revealed that HHFI had set up the Hotel in its channels and marketed the Hotel to consumers in Lenexa, based on the physical address of the Hotel.

65. On November 19, 2009, the Hotel completed a name change form. Mr. FitzMaurice wrote that: "I will not support Kansas City-Overland Park. I believe it should be Overland Park, Kansas City area. For our channels – I don't think we need to keep Lenexa in any channel."

66. On November 19, 2009, Mr. Craig wrote to Tim Genovese, the Vice President, Upscale Hotels InterContinental Hotel Group, about HHFI's failures and the need to change the naming and association of the property.

67. On November 20, 2009, Mr. FitzMaurice wrote he was "fully supportive of advocating a change and trying new naming – when in fact your property is not in Kansas City nor in Overland Park. It is currently Lenexa, Overland Park."

68. In or around November, 2009, the Hotel was changed in the HHFI channels to focus on Kansas City and Overland Park, and the name was changed to Crowne Plaza Kansas City-Overland Park.

69. On December 24, 2009, Mr. Genovese wrote: "I know the situation you and your hotel have faced is frustrating. Please be assured Mike and I have been working on behalf of the ownership and the Hotel to resolve any issues you believe are hindering the hotels growth with HHFI."

70. Despite these assurances from various HHFI representatives, the Hotel's HHFI sponsored webpages have been and remain practically invisible on the internet in searches for Kansas City hotels. For example, as of the time this First Amended

Complaint was written, HHFI's webpage for the Hotel shows up no sooner than the 4th page of results in an organic (as opposed to paid) Google search for Kansas City Crowne Plaza Hotels, and the Hotel is not displayed on Google Maps in searches such as "Kansas City Crowne Plaza hotels." Similarly, the Hotel cannot be located at all on BusinessSource when searching for Crowne Plazas in Kansas City or Overland Park; instead, the Hotel can be located only when searching specifically for a Crowne Plaza hotel in Lenexa.

**HHFI Call Centers**

71. By July 2009, Lenexa Hotel also started to notice that HHFI's Central Reservation Office (CRO) was sending almost no business to the Hotel. This led to an investigation of the HHFI call centers that has lasted for more than three years.

72. The investigation revealed that the CRO agents were not identifying the Hotel as an option for customers calling both (800)-2-CROWNE and (877)-2-CROWNE looking for a Crowne Plaza hotel in Kansas City. Often, follow-up inquiries led to agents recommending Holiday Inn options in the Kansas City area. In many cases, the Hotel was never identified by the CRO agents, even after additional prompting by the caller.

73. In November, 2009, Mr. Craig wrote to Mr. FitzMaurice: "It is urgent that we speak right away. Despite your assurances some months ago that HHFI would fix this problem, the CP res line is continuing to virtually ignore our hotel's presence in the Kansas City market."

74. On November 19, 2009, Mr. Craig wrote to Mr. Genovese about his "extreme displeasure and concern about repeated failures and shortcoming of the HHFI central reservation system." He explained that the Hotel was in the process of changing

the designation of the Hotel. He noted, "Because I have not seen the internal working of HHFI's reservation system, I do not know what effect this change will have. I do know that calls inquiring about reservations in other metropolitan areas (Chicago, Atlanta, Philadephia, etc) inevitably result in responses that numerous Crowne Plaza Hotels are available in those areas, even referring to hotels in outlying cities. There is absolutely no valid reason that a caller asking about available Crowne Plaza hotels in Kansas City should not elicit the response that there are two without prompting."

75. Mr. FitzMaurice wrote on November 20, 2009, that he wanted Lenexa Hotel to forward their CRO test calls: "I am in receipt of your letter to Tim Genovese and HHFI Team and we have already started process of examination including senior leadership of our CRO's."

76. In December, Lenexa Hotel forwarded more test calls to HHFI showing high rates of failure by the CRO. HHFI continued promising to address the issue.

77. In January, 2010, HHFI assigned Simon Tyler, Director Global Reservations Operations and another executive, Lisa Berry, to investigate the issues.

78. In a telephone call in January 2010, Lisa Berry admitted that there was a very high failure rate on the test calls that she was conducting. In a follow up call in February 2010, Ms. Berry stated that the failure rate was down to 30% and she promised to continue to address the problems until the failed calls ceased.

79. But the problems continued.

80. Mr. Craig continued to press HHFI to correct the problems but no significant changes appear to have been made.

81. In October 2011, Mr. Craig and HHFI President of the Americas, Kirk Kinsell, spoke by phone about these issues. Mr. Kinsell noted that while the hotel was above the system average for CRO system contribution, “at your low volume this is a rather meaningless statistic.” Mr. Kinsell vowed to “resolv[e] the mystery” of the hotel’s CRO issues.

82. Mr. Kinsell has never been back in touch about the Hotel.

83. And HHFI now denies any problems exist with the CRO.

84. In a recent video conference call, HHFI brushed aside all of the calls conducted during the Hotel’s investigation by explaining that the caller was not making inquiries in a manner consistent with how a consumer would actually request a hotel.

85. Because Plaintiff does not have access to the internal workings of the HHFI system, it is still unclear whether HHFI’s call agents are using proprietary software, Google maps or other technology to identify potential Crowne Plaza options.

**The Holiday Inn Re-launch Program**

86. HHFI has compounded the Hotel’s revenue problems by emphasizing Holiday Inns. HHFI re-launched the Holiday Inn brand family in 2007. HHFI spent more than a billion dollars promoting the re-launch. Upon information and belief, HHFI made the success of the re-launch its priority and pushed travelers to Holiday Inn hotels rather than Crowne Plaza hotels at similar price points. Test calls have confirmed that HHFI has sent travelers to Holiday Inn hotels calling the Crowne Plaza reservation system number asking for a Crowne Plaza hotel in Kansas City.

**The Property Improvement Plan**

87. HHFI created a document entitled "Proposed Conversion of the Radisson Hotel to a Crowne Plaza Hotel" that is dated March 7, 2007. This is the original PIP for the Hotel. On March 24, 2008, HHFI's Susan Rady sent a letter to Mr. Craig that is marked "Attachment B" and revised the PIP. The License Agreement provides that Licensee agrees to perform the construction and renovation work.

88. Lenexa Hotel completed the renovations required to open the Hotel.

89. Lenexa Hotel has continued to renovate the Hotel.

90. HHFI continues to assert that the PIP has not been completed.

91. The exact requirements of the PIP have changed over time as HHFI has had different personnel involved.

92. Lenexa Hotel has substantially complied with the requirements of the PIP, especially in light of the revenue problems caused by HHFI.

93. HHFI's failure to drive demand and its refusal to take reasonable steps to adequately promote the Hotel has frustrated Lenexa Hotel's ability to allocate financial resources to capital improvements. Resources that would have been used for capital improvements are now being allocated to meet working capital demands to keep the Hotel open.

***CAUSES OF ACTION***

**COUNT I**

(BREACH OF CONTRACT – EXPRESS DUTY)

94. Plaintiff incorporates herein all factual allegations made above.

95. Defendant owes significant obligations to Plaintiff under the License Agreement including to market and promote the Hotel; operate and provide access to a central reservation system that is supported by HHFI resources, including the internet and call centers.

96. By the conduct described above, Defendant has breached the express terms of the contract including failing to provide meaningful reservation services through the CRO and internet, failing to address concerns repeatedly raised by Plaintiff, and through other actions and inactions more fully described above.

97. As a result of these breaches by Defendant, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial plus interest.

98. Plaintiff request recovery of monetary damages in an amount to compensate it for the injuries it has sustained as a result of HHFI's breaches of the license agreement.

99. In addition, or in the alternative, Plaintiff seeks an order requiring HHFI to disgorge and forfeit all fees (including, but not limited to, marketing fees) that Plaintiff has paid to HHFI during the period in which HHFI has been in breach of the contract.

**COUNT II**

(BREACH OF CONTRACT – IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING)

100. Plaintiff incorporates herein all factual allegations made above.

101. Defendant owes significant obligations to Plaintiff under the License Agreement including an implied duty to:

- use best efforts to market and promote the Hotel;

- design and operate a central reservation system that identifies the Hotel as one of two upscale Crowne Plaza hotels located in the Kansas City metropolitan area;
- adequately train call center employees to identify the Hotel as one of two Crowne Plaza hotels in the Kansas city metropolitan area;
- design and provide a webpage that gives the Hotel a meaningful web presence in the target markets of the Kansas City metropolitan area and Overland Park;
- design and provide a webpage that is aimed at identifying the Hotel as one of two upscale Crowne Plaza hotels located in the Kansas City metropolitan area;
- retain internet experts capable of marketing the Hotel on the internet as one of two upscale Crowne Plaza hotels located in the Kansas City metropolitan area; and
- design and operate the System in a manner that treats Plaintiff and the Hotel fairly and on the same basis as other franchisees.

102. By the conduct described above, Defendant has breached the contract by the failure to provide meaningful reservation services through the CRO and internet, failure to address concerns repeatedly raised by Plaintiff, and through other actions and inactions more fully described above that have denied Plaintiff the fruits of its License Agreement.

103. As a result of these breaches by Defendant, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial plus interest.

104. Plaintiff requests recovery of monetary damages in an amount to compensate it for the injuries it has sustained as a result of HHFI's breaches of the license agreement.

105. In addition, or in the alternative, Plaintiff seeks an order requiring HHFI to disgorge and forfeit all fees (including, but not limited to, marketing fees) that Plaintiff has paid to HHFI during the period in which HHFI has been in breach of the contract.

**COUNT III**

(DECLARATORY JUDGMENT)

106. Plaintiff incorporates herein all factual allegations made above.

107. The License Agreement obligates Lenexa Hotel to perform construction and renovation work, which is set forth in Attachment B and incorporated into the Agreement by reference in paragraph 14.I.

108. Plaintiff Lenexa Hotel has spent in excess of $7 million on renovations to the Hotel.

109. HHFI continues to take inconsistent and unfair positions on the renovation work that is required.

110. Lenexa Hotel has substantially complied with its contractual obligations under the License Agreement.

111. In addition, since any purported nonperformance of Lenexa Hotel was directly caused by the conduct of HHFI, such conduct shall excuse Lenexa Hotel from performance under the law. Had HHFI performed its obligations, Plaintiff would have the cash flow to support additional renovations and upgrades. Plaintiff at present is unable to borrow any additional funds and, due to HHFI's actions and inactions, Plaintiff is being forced to use available funds to meet the day-to-day capital requirements of operating the Hotel.

112. Accordingly, Lenexa Hotel seeks a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, and Federal Rule of Civil Procedure 57 that it is in compliance with the License Agreement and/or is excused from full performance as a matter of law.

**RELIEF REQUESTED**

WHEREFORE, by virtue of the unlawful conduct of Defendant as alleged in this Complaint, Plaintiff respectfully prays that:

(A) The Court enter judgment in favor of Plaintiff on all counts;

(B) Damages be awarded to Plaintiff against Defendant in an amount to be determined at trial, plus interest, reasonable costs and attorneys' fees;

(C) An order be issued requiring HHFI to disgorge and forfeit all fees (including, but not limited to, marketing fees) that Plaintiff paid to HHFI during the period in which HHFI has been in breach of its duties;

(D) A declaration be issued by the Court stating that Plaintiff is in compliance with the License Agreement or excused from full performance due to Defendants' conduct;

(E) Pre-judgment and post-judgment interest be awarded at the highest rates allowed by law;

(F) Plaintiff's reasonable and necessary attorneys' fees and litigation expenses be awarded; and

(G) Plaintiff be granted such other and further relief as Plaintiff may prove at trial and this Court may deem just and proper.

Plaintiff designated Kansas City as place of Trial.

**JURY TRIAL IS REQUESTED**

Date: January 7, 2013

Respectfully Submitted,

**WAGSTAFF & CARTMELL LLP**

Tyler W. Hudson KS #20293
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 - Phone
(816) 531-2372 - Fax
thudson@wcllp.com

**FAGAN EMERT & DAVIS, LLC**

/s/ Brennan P. Fagan
Brennan P. Fagan KS #20430
730 New Hampshire Street, Suite 210
Lawrence, KS 66044
(785) 331-0300 - Phone
(785) 331-0303 – Fax
bfagan@fed-firm.com

**ATTORNEYS FOR PLAINTIFF**