# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LENEXA HOTEL, LP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 12-2775-KHV |
| HOLIDAY HOSPITALITY | ) |
| FRANCHISING, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Lenexa Hotel, LP brings suit against Holiday Hospitality Franchising, Inc. for breach of contract, breach of the implied duty of good faith and fair dealing and for a declaration that it has complied with its contractual obligations or is excused from doing so based on defendant's actions. Plaintiff alleges that defendant breached both express and implied obligations imposed under the parties' License Agreement. Through this License Agreement, plaintiff obtained the rights to convert a hotel which it owns and operates to a Crowne Plaza branded hotel, and to operate it as part of the Crowne Plaza franchise system.

This matter is before the Court on Holiday Hospitality Franchising Inc.'s Motion To Dismiss Plaintiff's First Amended Complaint For Failure To State A Claim (Doc. #7) filed February 1, 2013. Defendant seeks dismissal because (1) plaintiff fails to identify any specific provision under the License Agreement which defendant has purportedly breached; (2) plaintiff consequently cannot assert a claim for breach of the implied duty of good faith and fair dealing; and (3) the facts alleged do not give rise to a case or controversy and therefore this Court cannot grant declaratory relief. For the following reasons, the Court overrules defendant's motion.

**Legal Standards**

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id. at 679-80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991). Plaintiff bears the burden of framing its complaint with enough factual matter to suggest that it is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim when it pleads factual content from which the Court can reasonably infer that defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendant has acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not "shown" – that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type

of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008)).

**Factual Background**

The first amended complaint alleges the following facts:

Plaintiff is a Kansas limited partnership owned by Ventura Hotel Corporation and Stephen J. Craig. Craig owns 100 per cent of Ventura Hotel Corporation. For more than 25 years, Craig has owned companies that have owned and operated more than 100 hotels in 25 states. He was Executive Vice President of Brock Hotel Corporation when it owned and managed 76 Holiday Inns in 23 states. One of the entities in which Craig was an executive acquired the hotel which is the subject of this action ("the Hotel") from Holiday Inns, Inc. in 1980. The Hotel was then a 112-room Holiday Inn. In 1984 it was converted to a 297-room Holidome Indoor Recreation Center. In 2003 it was converted to a Radisson and remained as such until its ultimate conversion to the Crowne Plaza brand. The Hotel has 257 guest rooms and offers upscale amenities including a health and fitness center, indoor pool, restaurant, bar, business center and meeting and banquet space.

Holiday Hospitality Franchising, Inc. ("HHFI") is a Delaware corporation with its principal place of business in Atlanta, Georgia. It is one of the largest hotel groups in the world, operating 4,500 hotels worldwide with more than 650,000 rooms. Of its nine brands, the three major brands are InterContinental (luxury), Crowne Plaza (upscale), and Holiday Inn (midscale). Defendant holds itself out as a world-leading hotel franchisor able to drive demand through a number of different channels, including Priority Club rewards, sales and marketing professionals, internet sites and global call centers. In its United States business operations, defendant uses the trade name "InterContinental Hotels Group." In metropolitan Kansas City, defendant has one upscale and two luxury hotels. In addition to the Hotel,

defendant has the InterContinental Hotel on the Country Club Plaza and another Crowne Plaza in downtown Kansas City, Missouri.

In early 2007, plaintiff contemplated converting the Hotel to another brand. Craig and William Stuckeman, another executive for plaintiff, began discussions with defendant through Keith Biumi, defendant's Regional Vice President for Upscale Franchising and Business Development. Because such a conversion is an expensive proposition, Craig insisted upon assurances that defendant would generate sufficient demand for the Hotel to justify spending millions of dollars in conversion costs and paying hundreds of thousands of dollars in annual royalties. Craig understood that the Hotel's location would require regional and national marketing to attract out-of-town business travelers and groups. To that end, Craig had extensive conversations and communications with defendant's representatives about defendant's abilities. Defendant repeatedly represented that its reservation system, supported through the web, call centers around the world and the travel agent booking system, was designed to market the Hotel as one of only three HHFI upscale or luxury hotels in the Kansas City metropolitan area. Defendant further represented that its marketing and internet experts would develop a plan to drive room revenue and attract out-of-town business travelers and groups to the Hotel, and that its Priority Club rewards program, world-class revenue systems, sales force of thousands and marketing system fund would generate demand.

During the parties' 2007 negotiations, defendant represented to plaintiff that a hotel located in downtown Kansas City was converting from a Radisson to a Crowne Plaza, and that another hotel on the Country Club Plaza was converting and was flagged as defendant's luxury brand, the InterContinental Hotel. Biumi represented that Crowne Plaza, through its director Mike FitzMaurice, would coordinate efforts between the Hotel and the Crowne Plaza downtown and would collectively

-4-

enhance the HHFI upscale and luxury brands in the Kansas City area. In August of 2007, Stuckeman made it clear that the key issue for plaintiff was whether defendant could demonstrate the ability to generate corporate transient and group demand for the Hotel. He pointed out to Biumi that a Holiday Inn was opening on I-435 (about seven miles from the Hotel). Biumi responded by email, pointing out differences between the Holiday Inn and Crowne Plaza brands and marketing and explaining why a midscale Holiday Inn would not prevent a Crowne Plaza from drawing out-of-town business travelers.

Talks between the parties stalled. In February of 2008, Biumi encouraged Craig and Stuckeman to submit plaintiff's conversion application because defendant had received an application from another party to build a new hotel as a Crowne Plaza in Olathe, Kansas. Based on this representation and on defendant's representations that it could effectively market the Hotel as an upscale Kansas City metropolitan area hotel and drive demand, plaintiff moved forward with the conversion process. Later that month, Stuckeman wrote to Biumi and asked if the Hotel could be called "Crowne Plaza Kansas City South." Biumi referred the question to FitzMaurice as the person best able to determine what search was most common, but he continued to acknowledge in other communications defendant's obligation and ability to effectively market the Hotel.

As negotiations continued, Biumi and FitzMaurice made representations about the various means defendant would employ to drive demand to the Hotel, including maximizing the Hotel's internet presence, getting the Hotel to the forefront of travel sites and search engines and using defendant's central reservations system for the Crowne Plaza brand. Based on these representations, plaintiff agreed to a Property Improvement Plan ("PIP"),[1] committed to paying royalties to defendant which were

---

[1] Defendant created the original PIP on March 7, 2007, and a revised version on March 24, 2008. Plaintiff completed the renovations required to open the Hotel and has continued to
(continued...)

-5-

significantly higher than those paid to Radisson, submitted its application and committed to converting the Hotel to a Crowne Plaza. On its application, plaintiff listed its primary reason for purchasing the Crowne Plaza license as defendant's "ability to drive corporate transient and group business and loyalty program."

Defendant gave plaintiff a Uniform Franchise Offering Circular ("UFOC")[2], which includes financial performance representations and reinforces the representations Craig and Stuckeman had given about defendant's ability to drive demand to the Hotel. Ultimately, on May 13, 2008, plaintiff executed the Crowne Plaza Conversion License Agreement ("the License Agreement"), which focuses on plaintiff's access to "the System" which defendant operates and licenses to "provide a distinctive, high quality hotel service to the public under the name 'Crowne Plaza.'"[3] Doc. #8-1 at ¶ 1. The License Agreement defines "the System" as follows:

> The System is composed of all elements which are designed to identify Crowne Plaza hotels to the consuming public or are designed to be associated with those hotels or to contribute to such identification or association and all elements which identify or reflect the quality standards and business practices of such hotels, all as specified in this License or as designated from time to time by [defendant]. The System at present includes, but is not limited to, the principal trade and/or service marks Crowne Plaza,® Crowne Plaza® Suites and Crowne Plaza® Resort (as appropriate to the specific hotel operation

---

[1](...continued)
renovate. Defendant has changed the requirements of the PIP over time and asserts that plaintiff has not completed those requirements. Plaintiff has substantially complied with its PIP obligations. Defendant's failures in marketing and reservations have frustrated plaintiff's ability to allocate money to capital improvements, however, as plaintiff has had to allocate resources to meet working capital demands that it would have used for capital improvements.

[2] The UFOC (known as the "Franchise Disclosure Document" since 2007) is provided to prospective purchasers of franchises and governs disclosure of essential information in the sale of a franchise. It is mandated and regulated by the Federal Trade Commission. See 16 C.F.R. Part 436.

[3] Defendant attached a copy of the License Agreement (Doc. #8-1) to its motion, and the parties agree that the Court may properly consider its terms in ruling on this motion. See Doc. #8 at 1 n.1; Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss (Doc. #10) at 2 n.1.

-6-

> to which it pertains), Holidex® and the other Marks, . . . and intellectual property rights made available to licensees of the System by reason of a license; all rights to domain names and other identifications or elements used in electronic commerce as may be designated from time to time by [defendant] in accordance with [defendant]'s specifications to be part of the System; access to a reservation service operated in accordance with specifications established by [defendant] from time to time; distribution of advertising, publicity and other marketing programs and materials; the furnishing of training programs and materials; confidential or proprietary information standards, specifications and policies for construction, furnishing, operation, appearance and service of the Hotel, and other requirements as stated or referred to in this License and from time to time in [defendant]'s Standards Manual (the "Manual") or in other communications to [plaintiff]; and programs for inspecting the Hotel, measuring and assessing service, quality and consumer opinion and consulting with [plaintiff]. [Defendant] may add elements to the System or modify, alter or delete elements of the System in its sole discretion from time to time.

Id. at ¶ 1.B.

The License Agreement assigns certain responsibilities to each of the parties. For example, during the term of the agreement defendant is to "afford [plaintiff] access to reservation service for the Hotel on terms consistent with this License." Doc. #8-1 ¶ 4.B. Plaintiff is obligated to pay a "Services Contribution" equal to 3% of gross revenue, and in turn defendant is to use those funds for marketing, reservations and related activities.[4] Id. ¶¶ 3.C.(1)(b), 4.G. Because marketing is defendant's obligation, the License Agreement precludes plaintiff from engaging in local and regional marketing programs without defendant's permission. Id. ¶ 4.H. Based on the License Agreement representations about the System, plaintiff believed that defendant would design and provide a marketing program tailored to fit and drive demand to the Hotel.

On May 6, 2009, the Hotel opened as a Crowne Plaza. Almost immediately, plaintiff became

---

[4] Plaintiff must also pay a number of other fees, including a 5% royalty of hotel room gross revenue; $11.91 monthly Technology Fee for each guest room; all fees due for travel agent commissions; and $3.00 per room monthly fee for mandatory participation in the Crowne Plaza Hotel Marketing Association.

aware of problems with how defendant was marketing the Hotel. Defendant did not evaluate the Kansas City market or associate the Hotel with key words that would identify it as an upscale Kansas City metropolitan hotel located in south Kansas City near Corporate Woods and the Sprint campus. Instead, defendant set up the Hotel in internet marketing channels as a Lenexa and/or Overland Park hotel. Two major failings on defendant's part have plagued the Hotel: (1) the Hotel has not been visible on the internet in searches for Kansas City hotels; and (2) defendant's Central Reservation Office has failed to find and recommend the Hotel to potential customers, even those calling a line said to be dedicated as a Crowne Plaza reservation line. The complaint provides five pages of detailed allegations as to how defendant's marketing efforts with respect to the internet are deficient and how defendant's call centers send almost no business to the Hotel, and it describes plaintiff's investigative efforts and communications with defendant to try to obtain better marketing and reservation service.

As a result of defendant's reservation system and marketing failures, the Hotel has performed worse as a Crowne Plaza than as a Radisson or Holiday Inn. Plaintiff believes that by revenue, it is one of defendant's worst performing hotels in the Kansas City market. Defendant's UFOC listed averages for occupancy percentage, average daily rate and revenue per room available for 53 other Crowne Plaza Hotels in suburban markets, and in 2009, 2010 and 2011, the Hotel has not approached any of those averages. The greatest lag is in revenue per room available, where the average is $70.43 and the highest figure the Hotel achieved is $32.75.

Defendant re-launched its Holiday Inn brand family in 2007, spending more than a billion dollars to promote the brand. Plaintiff has conducted test calls to defendant's Crowne Plaza reservation system asking for a Crowne Plaza hotel in Kansas City, only to be referred to Holiday Inn hotels. Defendant's emphasis on Holiday Inns has compounded the Hotel's revenue problems.

**Analysis**

Defendant asserts that plaintiff's breach of contract claim fails because plaintiff has not identified any specific provision under the License Agreement which defendant has purportedly breached. And because plaintiff has not stated a claim for breach of contract, defendant asserts that plaintiff cannot assert a viable claim for breach of the implied duty of good faith and fair dealing. Finally, defendant argues that plaintiff's declaratory relief claim must be dismissed because the complaint fails to allege facts that give rise to a case or controversy.

**I.     Breach Of Contract**

Defendant argues that the amended complaint fails to state a claim for breach of contract because it does not identify specific contractual provisions which defendant allegedly breached.

The amended complaint identifies the Crowne Plaza franchise System for which the License Agreement explicitly provides defendant the right to "modify, alter or delete elements . . . in its sole discretion from time to time." The amended complaint does not cite any specific provision which creates an affirmative obligation on defendant's part. In support of its argument, defendant relies on a single case, <u>American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.</u>, 426 F. Supp. 2d 1356 (N.D. Ga. 2006).[5] There, plaintiff franchisee brought suit against its franchisor after its initial investment expenses exceeded the estimates contained in the UFOC. Plaintiff alleged that defendant had represented that the maximum initial investment for three franchise restaurants was $814,500, but

---

[5] Defendant asserts that Georgia law governs plaintiff's claims because the License Agreement provides that it is to be governed by and construed under the laws of the State of Georgia. <u>Memorandum In Support Of Holiday Hospitality Franchising Inc.'s Motion To Dismiss Plaintiff's First Amended Complaint For Failure To State A Claim</u> (Doc. #8) filed Feb. 1, 2013 at 4-5. Plaintiff agrees. <u>Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss</u> (Doc. #10) filed February 22, 2013 at 12.

that plaintiff had spent more than $1,430,000. Plaintiff asserted a number of claims arising out of the parties' franchise agreement and related documents, including breach of contract. Defendant moved to dismiss all of plaintiff's claims. With respect to the breach of contract claim, defendant argued that plaintiff failed to state a claim because the complaint did not identify any contractual provision that defendant allegedly breached. The complaint alleged that defendant breached its contractual obligations in the following ways: (1) failing to perfect and make available a system of opening and operating Moe's Southwest Grill restaurants; (2) failing to use its skill, experience, knowledge and expertise to provide a reasonable and accurate statement of the initial investment expenses and food and labor costs; and (3) failing to use its skill, experience, knowledge and expertise to assist plaintiff in developing, opening and operating an economically viable restaurant franchise. Id. at 1368.

In its breach of contract count, plaintiff's complaint cited only the introductory paragraphs of the parties' franchise agreement, which referred to defendant's development of "the Moe's System," and stated that defendant "has acquired knowledge and experience in the composition, distribution, advertising and sale of food products by restaurants using the Moe's system." Id. at 1369. The district court concluded that the representations in the franchise agreement introduction did not obligate defendant to act in any specific way on behalf of plaintiff, and that elsewhere in the agreement defendant expressly disclaimed a duty to assist plaintiff in developing and operating an economically viable restaurant. Accordingly, the district court granted defendant's motion to dismiss without prejudice and with permission for plaintiff to amend its complaint.

Defendant contends that here, because plaintiff cites no specific provision of the License Agreement which creates any affirmative obligation which defendant has breached, the Court should adopt the result of American Casual Dining. Although defendant acknowledges that the License

Agreement "does set forth various affirmative obligations" on its part, defendant asserts that it has no obligation to plaintiff with respect to its reservation system because the License Agreement makes it clear that defendant "enjoys absolute and total discretion with regard to its control" over the reservation system. Memorandum In Support Of Holiday Hospitality Franchising Inc.'s Motion To Dismiss Plaintiff's First Amended Complaint For Failure To State A Claim (Doc. #8) filed Feb. 1, 2013 at 7-8.

Defendant's argument overreaches. While the License Agreement indeed grants discretion to defendant, that same Agreement also grants plaintiff a license to use the System which includes marketing programs and many other services in addition to reservations. The License Agreement obligates plaintiff to pay several monthly fees, many of which are specifically tied to defendant's marketing association, and obligates defendant to afford plaintiff access to reservation service for the Hotel which is paid for in part by plaintiff's mandatory Services Contribution fee. Doc. #8-1 ¶ 3.C. Defendant is effectively arguing that under the License Agreement, it has no legal obligations to plaintiff with respect to reservations or marketing. Plaintiff's amended complaint alleges otherwise. It lists a number of obligations that defendant has under the License Agreement and alleges that defendant has breached those obligations by failing to provide reservation, marketing and advertising services, and not permitting plaintiff to use the System for which plaintiff provides consideration. Viewing the allegations in the light most favorable to plaintiff, the Court cannot conclude as a matter of law that the License Agreement on its face imposes no marketing or reservations obligations on defendant. Therefore, defendant is not entitled to dismissal of Count I.

## II. Implied Duty Claim

Defendant offers a single argument in favor of its motion to dismiss Count II: that plaintiff cannot state a claim for breach of the implied duty of good faith and fair dealing because Georgia law

-11-

does not allow such claims unless plaintiff sets forth facts showing breach of an actual term of the agreement. By rejecting defendant's motion to dismiss with respect to Count I, the Court has concluded that the amended complaint sufficiently alleges breach of contract. Accordingly, defendant's motion is likewise overruled with respect to Count II.

### III.    Declaratory Judgment Claim

Defendant seeks dismissal of plaintiff's claim for declaratory relief, arguing that plaintiff has not alleged facts which sufficiently demonstrate a case or controversy and that considering the claim would serve no useful purpose. Defendant concedes that a court's decision on whether to grant declaratory relief is discretionary.

The Tenth Circuit Court of Appeals has articulated five factors for district courts to evaluate when determining whether to decline jurisdiction over a declaratory judgment action: (1) whether a declaratory judgment would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; (4) whether use of declaratory action would encroach upon state court jurisdiction; and (5) whether an alternative remedy would be better or more effective. State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994). As demonstrated by the cases which defendant cites, these factors are often applied where declaratory relief is the only relief which plaintiff requests, the parties are in a race to the courthouse and/or the parties have filed cases in both federal and state courts. E.g., UBS Fin. Servs., Inc. v. Ingraham, No. 09-2502-KHV, 2010 WL 6754383, at *1 (D. Kan. April 8, 2010) (employer filed federal court action seeking declaration its employees did not sexually harass defendant, where defendant had filed state court action alleging such); Buchanan v. Greene, No. 97-2569-KHV, 1998 WL 184448, at

-12-

*1 (D. Kan. March 12, 1998) (actuaries filed action seeking declaration they did not negligently or fraudulently provide accounting services to insolvent insurance company; receiver filed separate negligence and fraud suit against actuaries).

Plaintiff's amended complaint demonstrates a case or controversy between the parties. See n.1, supra. Defendant has not filed its own action, nor does it represent that it intends to do so. The declaratory judgment count is but one part of plaintiff's suit, and it arises out of the same set of operative facts as Counts I and II. Defendant has raised no compelling reason for the Court to dismiss Count III.

**IT IS THEREFORE ORDERED** that Holiday Hospitality Franchising Inc.'s Motion To Dismiss Plaintiff's First Amended Complaint For Failure To State A Claim (Doc. #7) filed February 1, 2013, be and hereby is **OVERRULED**.

Dated this 3rd day of September, 2013 at Kansas City, Kansas.

                                          s/ Kathryn H. Vratil
                                          KATHRYN H. VRATIL
                                          United States District Judge