IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY, KANSAS

| | | |
|---|---|---|
| LENEXA HOTEL, LP, | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HOLIDAY HOSPITALITY FRANCHISING, | ) | |
| INC., | ) | |
| | ) | No.  12-CV-2775 KHV/DJW |
| Defendant and Counterclaim | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STEPHEN J. CRAIG, | ) | |
| | ) | |
| Counterclaim Defendant. | | |

.

## HOLIDAY HOSPITALITY FRANCHISING, LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM

Comes now Holiday Hospitality Franchising, LLC, formerly known as Holiday Hospitality Franchising, Inc. ("HHF" or "Defendant"), by and through undersigned counsel, and for its Answer to the First Amended Complaint ("Complaint") filed by Lenexa Hotel, LP ("Plaintiff"), states as follows:

1.      Defendant denies that there are ongoing breaches of a franchise agreement by HHF.  HHF admits that Plaintiff seeks damages and a declaratory judgment.  Defendant admits that Plaintiff, through its principal, Steven Craig, has experience in the hotel franchising industry.  Defendant denies all other allegations in paragraph 1 of Plaintiff's Complaint.

2.      Defendant admits that it is a leading hotel franchisor.  Defendant denies all remaining allegations of paragraph 2 of Plaintiff's Complaint.

3.      Defendant denies the allegations of paragraph 3 of Plaintiff's Complaint.

4.      In response to paragraph 4 of Plaintiff's Complaint, Defendant admits that Plaintiff signed a License Agreement (hereafter the "Agreement") which required Plaintiff to comply with certain obligations.  Defendant further avers that said Agreement speaks for itself. Defendant denies Plaintiff's allegations to the extent they are contrary to or inconsistent with the terms of said Agreement.  Defendant denies that Plaintiff has fulfilled all of its obligations under the Agreement.

5.      In response to paragraph 5 of Plaintiff's Complaint, Defendant denies that Plaintiff's hotel (the "Hotel") is located in "South Kansas City" and avers that the Hotel is located in Lenexa, Kansas.  Defendant admits that there is a second Crowne Plaza branded hotel located in Downtown Kansas City and an InterContinental branded Hotel located on the Country Club Plaza.  Defendant denies all other allegations in paragraph 5 not specifically admitted herein.

6.      Defendant denies all allegations in paragraph 6.  Defendant further avers that "revenue numbers" speak for themselves.

7.      In response to paragraph 7 of Plaintiff's Complaint, Defendant admits that Plaintiff purports to have conducted "test calls" to Defendant's reservation numbers, but denies that said calls evidence any "systemic failures" by Defendant.  Defendant further denies that Plaintiff's Hotel is located in Kansas City and avers that the Hotel is in fact located in Lenexa, Kansas.  Defendant denies all remaining allegations in paragraph 7 of Plaintiff's Complaint not specifically admitted herein.

8.      Defendant denies the allegations of paragraph 8 of Plaintiff's Complaint.

9.      Defendant admits that Stephen Craig ("Craig") has experience in the hotel industry and that Craig has written letters to representatives of HHF or its parent company.

Defendant admits that Craig has sought to have the Hotel, which is located in Lenexa, Kansas, identified to the travelling public as if the Hotel is located in "Kansas City."   Defendant denies that it has in any way failed to fulfill any of its obligations under the terms of the Agreement or that any of its actions have caused damage to HHF.  Defendant denies all remaining allegations of paragraph 9 of Plaintiff's Complaint not specifically admitted herein.

10.     Defendant denies the allegations of paragraph 10 of Plaintiff's Complaint.

11.     In response to paragraph 11 of Plaintiff's Complaint, Defendant states that it is without sufficient information as to expenditures purportedly made by Lenexa, and therefore denies allegations relating to same.   Defendant admits that Plaintiff has not completed the Property Improvement Plan ("PIP") for its Hotel.   Defendant denies all other allegations in paragraph 11 of Plaintiff's Complaint not specifically admitted.

12.     Defendant admits that Plaintiff is obligated under the Agreement to, *inter alia*, pay HHF royalties and other fees.   Defendant denies all other allegations in paragraph 12 of Plaintiff's Complaint.

13.     Defendant admits that Plaintiff is a Kansas limited partnership, as alleged in paragraph 13 of Plaintiff's Complaint, but is without information or knowledge sufficient to form a belief regarding all other allegations in paragraph 13 of Plaintiff's Complaint and, therefore, denies the same.

14.     In response to paragraph 14 of Plaintiff's Complaint, Defendant states that the terms "upscale" and "ample" are ambiguous and vague and therefore denies allegations relating to same.   Defendant admits all other allegations of paragraph 14 of Plaintiff's Complaint. Defendant further avers that Holiday Hospitality Franchising, LLC is the successor to Holiday Hospitality Franchising, Inc.

15.     Defendant admits that it is a Delaware corporation with its principal place of business in Atlanta, Georgia and that it is now known as Holiday Hospitality Franchising, LLC. Defendant also admits that it signed the Agreement at issue.

16.     Defendant admits that it uses the name InterContinental Hotels Group.  Defendant denies all other allegations in paragraph 16 of Plaintiff's Complaint.

17.     Paragraph 17 of Plaintiff's Complaint calls for a legal conclusion as to which no response is required.

18.     Paragraph 18 of Plaintiff's Complaint calls for a legal conclusion as to which no response is required.

19.     Paragraph 19 of Plaintiff's Complaint calls for a legal conclusion as to which no response is required.

20.     Defendant admits the allegations of paragraph 20 of Plaintiff's Complaint.

21.     Defendant admits that InterContinental Hotels Group, Hilton Worldwide, Marriott International and Starwood Hotels and Resorts are four "hotel players" in the U.S. upscale hotel market.  Defendant denies the remaining allegations of paragraph 21 of Plaintiff's Complaint.

22.     Defendant denies the allegations of paragraph 22 of Plaintiff's Complaint.

23.     Defendant admits that every hotel in the HHF system has a Holidex code, which is a five letter identifier, and that the Hotel's Holidex code is MKCCP.  Defendant denies the remaining allegations of paragraph 23 of Plaintiff's Complaint.

24.     Defendant admits that "hotel performance" can be tracked based on occupancy, average daily rate, and revenue per available room, as alleged in paragraph 24 of Plaintiff's Complaint, but denies that these are the only matrices used to track a hotel's performance.

25.     Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 25 of Plaintiff's Complaint and, therefore, denies the same.

26.     Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 26 of Plaintiff's Complaint and, therefore, denies the same.

27.     Defendant admits that Craig and William Stuckeman had discussions with representatives of HHF regarding converting the Hotel to a Crowne Plaza branded hotel, as alleged in paragraph 27 of Plaintiff's Complaint.

28.     Defendant denies the allegations of paragraph 28 of Plaintiff's Complaint. Defendant further denies giving any "assurances" to Plaintiff regarding Defendant's "generat[ing] demand for the Hotel…[.]"

29.     Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 29 of Plaintiff's Complaint and, therefore, denies the same.

30.     Defendant admits that it has a reservation system that is supported, in addition to other channels, through the web, call centers around the world and GDS (the travel agent booking system).   Defendant denies all other allegations of paragraph 30 of Plaintiff's Complaint.

31.     Defendant admits that it has a Priority Club rewards program, revenue systems, a sales force and a system fund that generates demand for HHF branded hotels, however, HHF denies that it made any representations regarding the amount of demand that it would drive to the Hotel outside of what was stated in the Franchise Disclosure Document or Uniform Franchise

Offering Circular.    Defendant denies all other allegations of paragraph 31 of Plaintiff's Complaint.

32.    Defendant admits that in 2007 communications occurred between Lenexa and representatives of HHF regarding the Crowne Plaza brand's presence in Kansas City generally and regarding Lenexa's desire to become a Crowne Plaza® franchisee.  Defendant denies all other allegations of paragraph 32 of Plaintiff's Complaint.

33.    Defendant admits that communications occurred between Defendant and Plaintiff regarding the Hotel.  Defendant denies all other allegations of paragraph 33 of Plaintiff's Complaint.

34.    In response to paragraph 34 of Plaintiff's Complaint, Defendant admits that communications between Defendant and Plaintiff regarding the Hotel and, more specifically, the possibility of converting the Hotel to a Crowne Plaza branded hotel, occurred.  Defendant further avers that to the extent those communications were in writing, the substance of said communications speak for themselves.  Defendant denies all allegations contained in paragraph 34 of Plaintiff's Complaint to the extent they are inconsistent with or mischaracterize the substance of communication between Plaintiff and Defendant.

35.    Defendant admits that Plaintiff elected to "move forward" with its decision to convert the Hotel to a Crowne Plaza branded hotel.  Defendant denies all other allegations of paragraph 35 of Plaintiff's Complaint.

36.    In response to paragraph 36 of Plaintiff's Complaint, Defendant admits that communications occurred between agents of Plaintiff and Defendant regarding the name of the Hotel.  Defendant further avers that to the extent those communications were in writing, the

substance of said communications speak for themselves.   Defendant denies the allegations contained in the last sentence of paragraph 36 of Plaintiff's Complaint.

37.     Defendant admits that Craig, Mr. Stuckeman, Mr. Biumi, and Mr. Fitzmaurice had communications in February 2008.   Defendant admits that it is has a "System", internet experts, the largest hotel loyalty rewards program, and a worldwide network.   Defendant denies all other allegations of paragraph 37 of Plaintiff's Complaint.

38.     Defendant denies the allegations of paragraph 38 of Plaintiff's Complaint.

39.     Defendant admits that it has the 1-800-2 Crowne number and resources. Defendant denies all other allegations of paragraph 39 of Plaintiff's Complaint.

40.     In response to paragraph 40 of Plaintiff's Complaint, Defendant avers that the Agreement, which incorporates the Property Improvement Plan, speaks for itself.   Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegation regarding the amount of spending that Lenexa was committing to or that the royalties were significantly higher than those paid to Radisson and, therefore, denies the same.   Defendant denies all other allegations of paragraph 40 of Plaintiff's Complaint.

41.     Defendant admits that Lenexa's application to become a Crowne Plaza® franchisee includes the phrase: "The ability to drive corporate transient and group business and loyalty program."   Defendant is without information or knowledge sufficient to form a belief as to the truth of all other allegations of paragraph 41 of Plaintiff's Complaint and, therefore, denies the same.

42.     In response to paragraph 42 of Plaintiff's Complaint, Defendant admits that Plaintiff was provided with appropriate disclosure documents, which included certain financial representations, prior to Plaintiff entering into the Agreement.   Defendant further states that the

disclosure documents speak for themselves.  Defendant denies the allegations in paragraph 42 of Plaintiff's Complaint to the extent they are inconsistent with or mischaracterize the language of any such disclosure documents.  Defendant further denies that any "representations" were made by Defendant that were contrary to or inconsistent with the Agreement or disclosure documents. Defendant denies all other allegations of paragraph 42 of Plaintiff's Complaint.

43.     In response to paragraph 43 of Plaintiff's Complaint, Defendant admits that Plaintiff was provided with appropriate disclosure documents prior to Plaintiff entering into the Agreement.   Defendant further states that the disclosure documents speak for themselves. Defendant denies the allegations in paragraph 43 of Plaintiff's Complaint to the extent they are inconsistent with or mischaracterize the language of any such disclosure documents.  Defendant further denies that any "representations" that were contrary to or inconsistent with the Agreement or disclosure documents were made by any agents of Defendant to Plaintiff.

44.     Defendant admits the allegations of paragraph 44 of Plaintiff's Complaint.

45.     Defendant admits the allegations of paragraph 45 of Plaintiff's Complaint.

46.     Defendant admits the allegations of paragraph 46 of Plaintiff's Complaint.

47.     Defendant admits the allegations of paragraph 47 of Plaintiff's Complaint.

48.     Defendant admits the allegations of paragraph 48 of Plaintiff's Complaint.

49.     Defendant denies the allegations of paragraph 49 of Plaintiff's Complaint.

50.     Defendant admits the allegations of paragraph 50 of Plaintiff's Complaint.

51.     Defendant admits the allegations of paragraph 51 of Plaintiff's Complaint.

52.     Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 52 of Plaintiff's Complaint and, therefore, denies the same.

53.     Defendant admits the allegations of paragraph 53 of Plaintiff's Complaint.

54.     Defendant denies the allegations of paragraph 54 of Plaintiff's Complaint.

55.     In response to paragraph 55, Defendant denies that the Hotel has been "plagued" by any failings of Defendant.  Defendant denies all remaining allegations of paragraph 55 of Plaintiff's Complaint.

56.     In response to paragraph 56 of Plaintiff's Complaint, Defendant admits that the Hotel has not performed well compared to its self-identified competitive set, but denies the remaining allegations of paragraph 56 of Plaintiff's Complaint.

57.     Defendant denies the allegations of paragraph 57 of Plaintiff's Complaint.

58.     Defendant denies the allegations of paragraph 58 of Plaintiff's Complaint.

59.     Defendant denies the allegations of paragraph 59 of Plaintiff's Complaint.

60.     Defendant admits that a Lenexa Hotel employee emailed Mike FitzMaurice on July 21, 2009.  Defendant denies all other allegations of paragraph 60 of Plaintiff's Complaint.

61.     In response to paragraph 61, Defendant admits that Plaintiff has cited portions of an email sent by Mike FitzMaurice and that said email speaks for itself.  Defendant denies that Plaintiff has quoted the complete email and denies Plaintiff's characterization of the email.

62.     Defendant denies the allegations of paragraph 62 of Plaintiff's Complaint.

63.     In response to paragraph 63 of Plaintiff's Complaint, Defendant admits that Plaintiff has cited portions of an email sent by Mike FitzMaurice and that said email speaks for itself.  Defendant denies that Plaintiff has quoted the complete email and denies Plaintiff's characterization of the email.  Defendant denies all other allegations of paragraph 63 of Plaintiff's Complaint.

64.     Defendant denies the allegations of paragraph 64 of Plaintiff's Complaint.

65.     In response to paragraph 65, Defendant admits that Plaintiff has cited portions of an email sent by Mike FitzMaurice and that said email speaks for itself.  Defendant denies that Plaintiff has included the complete email.

66.     In response to paragraph 66 of Plaintiff's Complaint, Defendant admits that Craig wrote to Tim Genovese in November of 2009, but denies the veracity of assertions made by Craig.

67.     In response to paragraph 67, Defendant admits that Plaintiff has cited portions of an email sent by Mike FitzMaurice and that said email speaks for itself.  Defendant denies that Plaintiff has quoted the complete email.

68.     Defendant admits that in November, 2009, the hotel name was changed to Crowne Plaza Kansas City – Overland Park.  Defendant denies the remaining allegations of paragraph 68 of Plaintiff's Complaint.

69.     Defendant admits the allegations of paragraph 69 of Plaintiff's Complaint.

70.     Defendant denies the allegations of paragraph 70 of Plaintiff's Complaint.

71.     In response to paragraph 71 of Plaintiff's Complaint, Defendant admits that Plaintiff purports to have conducted an "investigation" into HHF's call centers.  Defendant denies that Plaintiff was receiving "almost no business" from HHF's reservation system.  Defendant further denies all other allegations in paragraph 71 of Plaintiff's Complaint not specifically admitted herein.

72.     Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 72 of Plaintiff's Complaint and, therefore, denies the same.  Defendant further denies that employees of its reservation center failed to properly

identify the hotel when customers were seeking to stay in the city or area where the Hotel is located.

73.     Defendant admits that in November of 2009 Craig corresponded with Mike FitzMaurice and that said communication speaks for itself.  Defendant denies the veracity of the statements contained in the correspondence from Craig.  Defendant denies all other allegations contained in paragraph 73 of Plaintiff's Complaint not specifically admitted herein.

74.     Defendant admits that in November of 2009 Craig sent a letter to Tim Genovese and that the letter speaks for itself.  Defendant denies the veracity of the statements contained in the letter from Craig.  Defendant denies all other allegations contained in paragraph 74 of Plaintiff's Complaint not specifically admitted herein.

75.     Defendant admits that FitzMaurice communicated with Plaintiff's agent in November 2009 and that the substance of that communication speaks for itself.  Defendant admits that Plaintiff has cited portions of an email sent by FitzMaurice and that said email speaks for itself.  Defendant denies that Plaintiff has quoted the complete email and denies Plaintiff's characterization of the email.

76.     Defendant admits that Plaintiff forwarded test calls to HHF.  Defendant denies all other allegations of paragraph 76 of Plaintiff's Complaint, including the representation as to what the test calls "show[ed]."

77.     In response to paragraph 77 of Plaintiff's Complaint, Defendant admits that Simon Tyler and Lisa Berry were involved in reviewing complaints made by Plaintiff as to the reservation system.   Defendant denies all other allegations in paragraph 77 of Plaintiff's Complaint.

78.     Defendant denies the allegations of paragraph 78 of Plaintiff's Complaint.

79.     Defendant denies the allegations of paragraph 79 of Plaintiff's Complaint.

80.     Defendant denies the allegations of paragraph 80 of Plaintiff's Complaint.

81.     Defendant admits the allegations contained in the first sentence of paragraph 81 of Plaintiff's Complaint.  Defendant further admits that Plaintiff has cited portions of correspondence sent by Kirk Kinsell and that said correspondence speaks for itself.  Defendant denies that Plaintiff has quoted the complete correspondence and denies Plaintiff's characterization of the email.  Defendant denies all other allegations of paragraph 81 of Plaintiff's Complaint.

82.     Defendant denies the allegations of paragraph 82 of Plaintiff's Complaint.

83.     Defendant admits the allegations of paragraph 83 of Plaintiff's Complaint.

84.     In response to paragraph 84 of Plaintiff's Complaint, Defendant admits that employees of HHF have held a video conference with agents of Plaintiff in order to discuss Plaintiff's perceived problems with Defendant's reservation system.  Defendant denies all other allegations of paragraph 84 of Plaintiff's Complaint, including Plaintiff's characterization of Defendant's reaction to the "calls."

85.     Defendant denies the allegations of paragraph 85 of Plaintiff's Complaint.

86.     In response to paragraph 86 of Plaintiff's Complaint, Defendant admits that it required Holiday Inn branded hotels to make certain improvements beginning in approximately 2007, which was also associated with new signage for the Holiday Inn brand.  Defendant denies all other allegations asserted in paragraph 86 of Plaintiff's Complaint.

87.     Defendant admits the allegations of paragraph 87 of Plaintiff's Complaint.

88.     Defendant admits the allegations of paragraph 88 of Plaintiff's Complaint.

89.     Defendant admits the allegations of paragraph 89 of Plaintiff's Complaint.

90.     Defendant admits the allegations of paragraph 90 of Plaintiff's Complaint.

91.     In response to paragraph 91 of Plaintiff's Complaint, Defendant denies that the requirements of the PIP have been changed after execution of the License Agreement. Defendant denies the remaining allegations of paragraph 91 of Plaintiff's Complaint.

92.     Defendant denies the allegations of paragraph 92 of Plaintiff's Complaint.

93.     Defendant denies the allegations of paragraph 93 of Plaintiff's Complaint.

## COUNT I

94.     Defendant incorporates herein its responses to the allegations made above.

95.     Defendant denies the allegations of paragraph 95 of Plaintiff's Complaint.

96.     Defendant denies the allegations of paragraph 96 of Plaintiff's Complaint.

97.     Defendant denies the allegations of paragraph 97 of Plaintiff's Complaint.

98.     Defendant denies that Plaintiff is entitled to the relief requested in Paragraph 98 of Plaintiff's Complaint.

99.     Defendant denies that Plaintiff is entitled to the relief requested in Paragraph 99 of Plaintiff's Complaint.

## COUNT II

100.    Defendant incorporates herein its responses to the allegations made above.

101.    Defendant denies the allegations of paragraph 101 of Plaintiff's Complaint.

102.    Defendant denies the allegations of paragraph 102 of Plaintiff's Complaint.

103.    Defendant denies the allegations of paragraph 103 of Plaintiff's Complaint.

104.    Defendant denies that Plaintiff is entitled to the relief requested in paragraph 104 of Plaintiff's Complaint.

105.     Defendant denies that Plaintiff is entitled to the relief requested in paragraph 105 of Plaintiff's Complaint.

### COUNT III

106.     Defendant incorporates herein its responses to the allegations made above.

107.     Defendant admits the allegations of paragraph 107 of Plaintiff's Complaint.

108.     Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 108 of Plaintiff's Complaint and, therefore, denies the same.

109.     Defendant denies the allegations of paragraph 109 of Plaintiff's Complaint.

110.     Defendant denies the allegations of paragraph 110 of Plaintiff's Complaint.

111.     Defendant denies the allegations of paragraph 111 of Plaintiff's Complaint.

112.     Defendant denies that Plaintiff is entitled to the relief requested in paragraph 112 of Plaintiff's Complaint.

113.     Defendant denies each and every allegation of Plaintiff's Complaint not specifically admitted herein.

### ADDITIONAL AND AFFIRMATIVE DEFENSES

114.     For its first affirmative defense, Defendant affirmatively alleges that Plaintiff's Complaint fails to state a claim upon which relief can be granted.

115.     For its second affirmative defense, Defendant affirmatively alleges that on September 24, 2010, Plaintiff, for good and valuable consideration, executed a written Forbearance Agreement, pursuant to which Defendant was released and forever discharged by Plaintiff from any and all claims arising, or which may arise or have arisen prior to September

24, 2010, which includes but is not limited to the claims now asserted in Plaintiff's Complaint. A copy of such release is attached and is incorporated fully by reference.

116.    For its third affirmative defense, Defendant states that Plaintiff's damages, if any, are not attributable to any acts or omissions of Defendant, but are due to the acts or omissions of Plaintiff, its agents or employees, or to third parties as to whom Defendant has no right or ability to control.

117.    For its fourth affirmative defense, Defendant states that Plaintiff has failed to mitigate its damages, if any.

118.    For its fifth affirmative defense, Defendant states that there is no causal relationship between Plaintiff's alleged damage or loss and any acts or omissions of Defendant.

119.    For its sixth affirmative defense, Defendant states that Plaintiff's claims are barred because Plaintiff engaged in a prior material breach of its obligations under the Agreement by failing to meet its obligations under the PIP.

120.    Defendant reserves the right to amend its affirmative defenses as discovery progresses in this matter.

## DEFENDANT'S COUNTERCLAIM

Holiday Hospitality Franchising, LLC, formerly known as Holiday Hospitality Franchising, Inc. ("HHF" or "Counterclaimant"), by and through undersigned counsel, and for its Counterclaim against Lenexa Hotel, LP ("Lenexa") and Stephen J. Craig ("Craig"), states as follows:

**Parties**

1.      Holiday Hospitality Franchising, LLC is the successor to Holiday Hospitality Franchising, Inc.  Holiday Hospitality Franchising, LLC's sole member is Six Continents Hotels, Inc., a Delaware corporation with its principal place of business in Atlanta, Georgia.

2.      Upon information and belief, Lenexa Hotel, LP is a Kansas limited partnership with its principal place of business in the state of Kansas.

3.      Upon information and belief, Stephen J. Craig is a resident of the state of Kansas.

**Jurisdiction and Venue**

4.      Subject matter jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District.

**General Allegations**

**Lenexa's Execution of License Agreement and Agreement to Complete Property Improvement Plan**

6.      Lenexa is the owner and operator of a hotel (the "Hotel") located at 12601 West 95th Street in Lenexa, Kansas.

7.      In early 2007, Lenexa began negotiations with HHF for the right to convert the Hotel into a Crowne Plaza® branded hotel and to operate the Hotel as a part of the Crowne Plaza® franchise system.

8.      As a condition to its being permitted to become a Crowne Plaza® franchise, Lenexa was required to complete a Property Improvement Plan which set forth the renovations

and standards that would be necessary to convert Lenexa's Hotel to a Crowne Plaza branded hotel.

9.     On March 7, 2007, HHF developed a Property Improvement Plan (hereafter the "PIP") relating to Lenexa's Hotel.  The PIP was subsequently revised on March 24, 2008, and eventually incorporated into and became an integral part of the License Agreement that Lenexa executed with HHF on or about May 13, 2008.  A true and accurate copy of the License Agreement is attached as Exhibit A and is incorporated fully be reference.  A true and accurate copy of the March 7, 2007 PIP and March 24, 2008 amendment are attached collectively as "Attachment B" to the License Agreement and are incorporated fully by reference. Ex. A, pp. 47-81.

10.     The purpose of the PIP (and subsequent amendment) is to, *inter alia*, protect the integrity and standards of the Crowne Plaza® brand and to provide Lenexa with a clearly written description of the scope of necessary renovation and construction.  Ex. A, p. 53.

11.     The PIP is extremely detailed regarding the renovations and improvements that were required by HHF, and also provided Lenexa with a "Milestone Completion Timetable" that set forth the dates by which all PIP improvements were to be completed.  Ex. A, p. 76.

12.     Lenexa agreed in the PIP that all work would be completed in conformity by the corresponding deadline set out in the Milestone Completion Timetable or that Lenexa would request an extension of the deadline in writing.  Ex. A, p. 76. Lenexa also agreed that the PIP plan may be modified and that Lenexa would be responsible for additional upgrades or renovations.  Ex. A, p. 74.

13.     In May of 2008, HHF and Lenexa entered into a License Agreement and, as a result, the PIP was incorporated as an integral part of the License Agreement.

14.     Under the terms of the License Agreement, Lenexa agreed that its failure to perform required construction and renovation work, as detailed in the PIP, and to meet all progress, milestone, completion and other dates specified in the PIP or amendments thereto, shall constitute a material breach of Licensee's obligations under the License Agreement.  Ex. A, § 14(I), p. 28.

15.     Pursuant to the License Agreement, Lenexa agreed, *inter alia*, to pay HHF all expenses, including reasonable attorneys' fees and court costs, incurred by HHF to remedy any defaults of or enforce any rights under the License Agreement, effect termination of the License Agreement or collect any amounts due under the License Agreement.  Ex. A, § 14(J), p. 28.

16.     Craig signed the License Agreement as President of Ventura Hotel Corporation, a general partner of Lenexa Hotel, L.P.  Ex. A, p. 33.

17.     Contemporaneous with his execution of the License Agreement on behalf of Lenexa Hotel, LP, Craig also signed a personal guaranty (the "Guaranty") of Lenexa's obligations under the License Agreement.  A true and accurate copy of the Guaranty is attached to the License Agreement and is incorporate fully by reference.  Ex. A, pp. 34-35.

18.     Pursuant to the Guaranty, Craig agreed to be jointly and severally liable to HHF for all expenses, including reasonable attorneys' fees and court costs, incurred by HHF to remedy any defaults of or enforce any rights under the Guaranty or License Agreement, to effect termination of the Guaranty or the License Agreement, or to collect any amounts due under the Guaranty or the License Agreement.  Ex. A, pp. 34-35.

19.     Subsequent to the original PIP, amendments and revisions were made to the plan, and at all times Lenexa and Craig were made aware of the modified requirements of the PIP.

**Lenexa's Failure to Meet PIP Deadlines**

20.     Despite being made fully aware of its obligations under the PIP, and despite HHF's having afforded Lenexa numerous extensions of its deadlines to complete the PIP items, Lenexa has failed to meet the requirements of the PIP.

21.     In August of 2013, a progress report of the Hotel was prepared by HHF which noted substantial deficiencies in Lenexa's compliance with the PIP.  A true and accurate copy of the report is attached as Exhibit B and is incorporated fully by reference.

22.     Because of these deficiencies, the Hotel is currently not in compliance with Crowne Plaza® standards or the terms of the License Agreement.

**Further Breaches of the License Agreement**

23.     Under section 3(A)(5) of the License Agreement, Lenexa agreed to:

> (5)     strictly comply in all respects with the Manual (as it may from time to time be modified or revised by Licensor) and with all other policies, procedures and   requirements   of Licensor which may be from time to  time communicated to Licensee (which communication may be, at Licensor' option, in hard paper copy or digital, electronic or computerized form and Licensee must pay any costs to retrieve, review, use or access such digital, electronic or computerized communication)

Ex. A, § 3(A)(5), p. 6.

24.     Lenexa has not complied with the Manual as it required under the License Agreement.

25.     For example, HHF's Sleep Advantage Bedding and Linens Program Standard requires that Lenexa place specified bedding packages in all of the Hotel's rooms, but Lenexa has failed to meet this standard.

26.     Upon information and belief, Lenexa has failed to comply with further obligations under the License Agreement.

**Lenexa and Craig's Breach of Forbearance Agreement**

27.     Pursuant to the terms of the License Agreement, Lenexa owed certain financial obligations to HHF.  Ex. A, § 3(C), pp. 7-9.

28.     Pursuant to Section 12(D)(1)(a) of the License Agreement, Lenexa's failure to meet its financial obligations could result in the immediate termination of the License Agreement.  Ex. A, § 12(D)(1)(a), p. 23.

29.     On May 25, 2010, HHF issued a formal notice of default and termination ("Notice Letter") arising from Lenexa's failure to meet its financial obligations pursuant to the License Agreement.  A true and accurate copy of the May 25, 2010 Notice Letter is attached as Exhibit C and is incorporated fully be reference.

30.     As of the May 25, 2010 Notice Letter, Lenexa owed fees to HHF in the amount of $136,791.81.  Ex. C, p. 2.

31.     Pursuant to the Notice Letter, Lenexa was given until July 5, 2010 in which to cure its financial default.  HHF also warned that Lenexa's failure to cure its financial default could result in the termination of Lenexa's License Agreement, which would be effective July 10, 2010.  Ex. C, p. 2.

32.     On July 16, 2010, as an accommodation to Lenexa, HHF extended the termination date established as a result of Lenexa's financial default to July 29, 2010.  *See* July 16, 2010 letter from HHF to Lenexa, a true and accurate copy of which is attached as Exhibit D and is incorporated fully by reference.

33.     Subsequently, on September, 16, 2010, based on Lenexa's request for additional time to cure its financial default, HHF agreed to enter into a Forbearance Agreement with Lenexa, through which HHF agreed to forbear terminating the License Agreement in exchange

for Lenexa's meeting all of the conditions and requirements of the Forbearance Agreement.  A true and accurate copy of the Forbearance Agreement is attached as Exhibit E and is incorporated fully by reference.

34.     Pursuant to the Forbearance Agreement, HHF agreed to allow Lenexa to pay all amounts due and owing to HHF—an amount in excess of $140,000—through a series of monthly installment payments.  Ex. E, p. 2.

35.     As consideration for HHF's agreement to enter into the Forbearance Agreement, Lenexa agreed to the following release:

> **D. Further Obligations.**  In further consideration of the agreement of Holiday to this forbearance, Licensee also agrees as follows:
>
> 1.     **Release**.  Licensee, on behalf of itself and its respective present and future principals, shareholders, members, representatives, investors, directors, officers, agents, employees, attorneys, partners, successors and assigns, does hereby release and forever discharge Holiday and its present and future parents, affiliates, subsidiaries (whether wholly-owned or not), successors and assignees its and their present and future principals, representatives, directors, officers, agents, shareholders, employees and attorneys, **from any and all claims arising, or which may arise or have arisen prior to the date hereof, and any other claims arising out of the License or any acts or omissions thereunder prior to the date hereof, and from any and all damages flowing therefrom.**

Ex. E, § D(1), p. 5 (emphasis added).

36.     Counter-defendant Craig executed the Forbearance Agreement both as President for Ventura Hotel Corporation, the General Partner for Lenexa Hotel, L.P., and in his individual capacity as a guarantor.  Ex. E, p. 8.

## COUNT I – Declaratory Judgment

37.     HHF incorporates by reference paragraphs 1 through 36 as if fully set forth herein.

38.     HHF seeks a declaratory judgment pursuant to 28 U.S.C. § 2201-02.

39.     There is an actual and justiciable controversy between the parties with respect to whether Lenexa is in compliance with its obligations under the License Agreement and the PIP.

40.     The License Agreement and the PIP obligate Lenexa to perform construction and renovation work which, as of the date of this Counterclaim, has not been completed.

41.     The License Agreement requires Lenexa to operate the Hotel in compliance with the Crowne Plaza standards, which includes Lenexa's strict compliance with all policies, procedures and requirements communicated by HHF, but Lenexa has failed to comply. Furthermore, the License Agreement requires Lenexa's satisfaction of renovations and improvements set forth in the PIP, but Lenexa has failed to make the necessary renovations and upgrades.

42.     Accordingly, HHF is entitled (and does hereby seek) a declaratory judgment that Lenexa is not operating in compliance with the License Agreement or the PIP and is compelled to take corrective measures to meet the requirements as set forth in the terms of the License Agreement and the PIP.

### COUNT II – Breach of Forbearance Agreement

43.     HHF incorporates by reference paragraphs 1 through 42 as if fully set forth herein.

44.     HHF and Lenexa entered into a valid Forbearance Agreement through which Lenexa agreed, *inter alia*, to release HHF from any claims which may have arisen prior to September 2010.

45.     Lenexa's First Amended Complaint asserts claims based on acts (or omissions) of HHF beginning in 2007.

46.     By asserting claims which are premised on actions that occurred prior to September 24, 2010, the date of the Forbearance Agreement, Lenexa has acted in breach of the clear and unambiguous terms of the release contained within the Forbearance Agreement.

47.     As a result of Lenexa's Complaint, HHF has been damaged in that it has been forced to incur costs and attorneys' fees to defend against claims which were released by Lenexa.

48.     As a personal Guarantor, Craig is jointly and severally liable for damages caused as a result of Lenexa's breach of the Forbearance Agreement.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, having answered Plaintiff Lenexa Hotel, LP's Complaint, asserted its affirmative defenses, and asserted counterclaims, Defendant/Counterclaimant Holiday Hospitality Franchising, LLC prays for the following relief:

A.      For dismissal of Plaintiff's Complaint with Prejudice;

B.      For a declaration issued by the Court stating that Plaintiff/Counterclaim-Defendant is in breach of the PIP and License Agreement;

C.      For judgment on its Counterclaim awarding HHF its attorney's fees and court costs; and

D.      For such other relief as the court deems just and equitable.

ARMSTRONG TEASDALE LLP


By:  /s/ David A. Jermann

    Edward R. Spalty           #70069
    espalty@armstrongteasdale.com
    David A. Jermann         #19686
    djermann@armstrongteasdale.com
    2345 Grand Boulevard, Suite 1500
    Kansas City, Missouri 64108-2617
    816.221.3420
    816.221.0786 (facsimile)

ATTORNEYS FOR DEFENDANT HOLIDAY
HOSPITALITY FRANCHISING, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2013, I electronically filed the above with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to all attorneys of record.

/s/ David A. Jermann
Attorney for defendant